Carr, J.
The appellees’ counsel objected to the jurisdiction of the court of chancery to give relief upon this bill, and in support of that objection, cited the case of Linney's adm’r v. Dare’s adm’r, 2 Leigh, 588. as resembling this. It is certainly like it in some of its features, but'very unlike it in others. We declined the jurisdiction in that case, because at the time of filing the bill, the plaintiff had a perfect *551 and plain legal remedy, as Ross, one of the obligors bound for the debt, was admitted, on all hands, to be perfectly solvent: in this case, it is admitted on the record, that before Sale’s bill was filed, Berryman was insolvent; so that, ira fact, the plaintiff'had no remedy at law, when he came into equity. Whether that fact, under the circumstances attending it, will entitle him to relief here, is another question. We know, that one partner cannot by deed bind the firm. The covenant, therefore, entered into by Berryman, for the purchase of the corn, imposed no obligation on Dishman. But it is in proof, that the corn, with his advice and assent, was sold and actually delivered to the firm. This created a debt against the firm, binding Dishman as well as Berry-man; a simple contract debt as to Dishman. By the death of Dishman, this debt survived against' Berryman; and the creditor lost all remedy at law against Dishman’s representatives. Berryman, afterwards, executed his bond for the debt. But neither the death of Dishman, nor the execution of Berryman’s bond, discharged Dishman’s representatives in equity. Their situation, however, was materially changed. They were, now, neither primarily nor absolutely liable. For the authorities relating to this point, and the further view of it there taken, I refer to the case of Linney’s adm’r v. Dare’s adm’r. The books all lay it down, that the first resort of the creditors is to the surviving partner, and if he be not responsible, then they may come upon the estate of the deceased partner in equity. I said, in Linney and Dare, that I had not met with a case, where the creditor had been suffered to come upon the assets of the deceased partner in equity, until he had first sued the surviving partner at law, and shewn a defect of assets, or such partner had been declared bankrupt: but I did not mean to be understood as supposing that there could be no such case. Insolvency may be ascertained just as satisfactorily without a suit as by one; whatever puts the fact beyond a doubt, is sufficient. Here, insolvency before the suit, is admitted. But when it took place, we are not informed. It *552 js sa¡f]; w¡th great reason, by lord Eldon in Ex parte Kendal, 17 Ves. 525, 6. that, as this resort to the funds of a deceased partner, is a demand in equity only, it can be enforced only on equitable principles; and that, where the dealing of the creditor with the surviving partners, has been such, as to render this relief inequitable, he will not be relieved. One instance of such dealing, is a course of conduct, shewing that the creditor means to relinquish his remedy against the assets of' the deceased, and look exclusively to the surviving partner. I see no such intention in the present case; for when Berryman offered Sale his obligation for the money, he refused at first, and finally accepted it, with a declaration, that he had no idea of releasing his claim on Dishman’s estate. But Sale, with Berryman’s bond in his possession, waited upwards of four years, before he took any step to recover the money : and if Dishman’s executors had put this matter in issue, and shewn us, that, but for this delay, the money might have been made out of Berryman, I strongly incline to think, that this also would have been such conduct, as would have rendered it inequitable to permit his resort to the estate of Dishman ; for lord Hardwiclce, speaking of this application to equity, in Bishop v. Church, 2 Ves. sr. 107. says “The plaintiff must come as from a pure fountain ; must shew himself not to be guilty of any laches, much less collusion, turning to the prejudice of the other side, which might be strong enough to rebut that equity set up beyond what the rule of law admits.” But the defendants made no such point in the pleadings; gave no notice of such a defence to their adversary : nor can this be supplied by the documentary evidence touching the point found in the record.
Upon the whole, I think the chancellor’s decree should be reversed, and a decree entered for the appellant.
Cabell, J.
This is the case of a creditor of a mercantile house, seeking to recover his debt from the representatives of a deceased partner: and the question is, whether he has shewn himself entitled to recover?
*553 It is an elementary principle, that on the death of one of two or more joint partners in trade, the legal obligation to pay the debts of the house, devolves exclusively on the survivors or survivor. But it is equally true, that the deceased partner, although discharged at law, is regarded, in equity, as still liable for the debt. That liability, however, cannot be made to affect his estate, even in equity, until the surviving partner becomes insolvent^Therefore, the first question in this case, is, whether it sufficiently appears, that the surviving partner was insolvent, before the commencement of the suit ?
There is no particular kind or degree of proof prescribed for establishing the fact of insolvency. In England 1 it is considered established by the party becoming a bankrupt; so also, by a judgement and execution and a return of nulla bona. But, in the case before us, the insolvency is admitted by the parties, oil the record ; which precludes the necessity of any other proof, and is of itself the establishment of the fact.
As the act of limitations was neither pleaded, nor any way relied upon, it is unnecessary to inquire, whether it would have been applicable to the case, or whether it would have availed, if it had been pleaded or relied upon. Mere length of time between the death of the deceased partner and the commencement of the suit, cannot avail, except as evidence of payment; and it cannot be pretended, that the time, in this case, was sufficient for this purpose.
Then, the only real question is, whether the creditor is bound to shew, that he has used due diligence in endeavouring to recover the debt from the surviving partner? orto shew, that an early prosecution of the suit against the surviving partner, would have been fruitless? I am clearly of opinion, that no such obligation rests upon him. The doctrine of due diligence, as between indorser and indorsee, and assignor and assignee, has never been applied as between a creditor of a mercantile house and a deceased partner. The reason is most obvious. The indorser or assignor *554 is never considered a debtor, or as liable for the debt, until the indorsee or assignee has first shewn that he has used due diligence, and has failed to recover the debt: but the deceased partner is considered, in equity, as originally and equally liable with the surviving partner: and the doctrine of due diligence can never apply as between joint debtors. That it does not apply, in such a case as the present, is clearly proved by Sleech’s case, 1 Meriv. 563. for, although the delay there was only six months, it would have been as fatal, on the ground of due diligence,-as a delay of as many years. Nor does the creditor lose his recourse against the estate of the deceased partner, even if, being requested, he refuses to sue the surviving partner himself, or to permit the representative of the deceased partner to sue in his name : as appears by the case of Bishop v. Church, 2 Ves. sen. 100. 371. The representative of the deceased partner, if he be dissatisfied with the delay, or unwilling to encounter its risk, has his redress in his own hands : he may either pay the debt, or institute a suit against the surviving partner for a settlement of the accounts; or he may, without paying the money, sue the surviving partner and the creditor. It is no objection to the authority of Bishop v. Church, that, in that case, both of the partners had bound themselves by bond, for the payment of the debt. For the bond being only joint, not joint and several, the deceased partner was as much discharged at law, from all obligation to pay the bond, as the deceased partner, in this case, was discharged from the legal obligation to pay this simple contract debt. Moreover, if the deceased partner be regarded merely as a surety, he has no more right than other sureties, to demand of the creditor, that he shall sue the principal. And that other sureties have no such right, except under our particular statute, 1 Rev. Code, ch. 116. § 6. p. 461. (which does not extend to a case like this), is clear from the case of Croughton v. Duval, 3 Call, 69.
I do not feel myself required, on the present occasion, to decide, as a general question, what sort of dealing between *555 the creditor and the surviving partner, or what sort of laches . , , on the part of the creditor, would be sufficient to rebut the equity of the creditor. It is sufficient for the present, to say, that, in my opinion, there is nothing, in this case, to impair the claim of the appellant.
Tucker, P.
It is apparent from the original agreement, signed by Berryman in the name of the firm, for the purchase of the corn from Sale, that the firm was looked to as debtors for the amount. It is natural, that it should have been so, as Dishman lent his name to give credit to the firm. The contract thus signed, and (by mistake of received principles, which deny the right of one partner to bind another at law by a seal) being sealed also, was nevertheless binding in equity upon both partners. When, indeed, it appears that the creditor intends to look only to the individual partner, it may be otherwise; but, in equity, the form of the thing is immaterial, if the substance of the contract was to hind both. Thus, even a joint bond is, in equity, after the death of one of the obligors, construed to be several as well as joint; because, in justice, in conscience, and by the intent of the parties, both are debtors. Wherever the real consideration is paid to both, both are bound to make satisfaction, though, through ignorance, the instrument is so drawn as to have another effect at law; and, as there is no legal remedy, a court of conscience will, if it can, reach the effects of the persons borrowing and receiving the money. Bishop v. Church, 2 Yes. sen. 100. In this case, then, the partners were clearly bound by the original contract. Without controverting the case of Tom v. Goodrich, 2 Johns. Rep. 213. which was an action of assumpsit, I think it is evident, that, unless it appears that the note or bond of an individual partner, is designed, to be accepted in discharge of the partnership, it will not have that effect in equity. Thus, even if a judgement be obtained against a surviving partner, on notes of the firm, that judgement is, at law, an extinguishment of the original notes (for, transit *556 in rem adjudicatam) and so in case of a bond, it would be, at law, an extinguishment of the simple contract; yet, in both cases, it would be in equity a partnership debt still. Jacomb v. Harwood, 2 Ves. sen. 265. Heath v. Percival, 1 P. Wms. 682. Orr v. Chase, 1 Meriv. 729. David v. Ellice, 5 Barn. & Cress. 196. 11 Com. Law Rep. 201. And this principle I understand to be distinctly recognized by this court, in Williams v. Donaghe's ex'or, 1 Rand. 300. and in Linney's adm'r v. Dare's adm'r, 2 Leigh, 588. Now, in the present case, the implication that the taking of Berry-man's bond was intended to absolve the partnership, is not only'weakened by the fact that he was the only surviving partner, but it is expressly repelled by Sale's declaration, at the time, that he would not give up his resort to Dishman’s estate. If the taking this obligation did not discharge Dish-man, the subsequent dealings with Berryman had not that effect.
The principal questions discussed at the bar, respect, 1. the jurisdiction of the court, and 2. the supposed laches of the plaintiff in pursuing Berryman.
On the subject of jurisdiction, I think there is' no difficulty. It was admitted, that Berryman was insolvent, when this suit commenced. No suit at law against him could avail, and therefore none could be required. It is also obvious, that as to Dishman's estate, the only remedy was in equity. The case is, therefore, not like Linney and Dare, where the jurisdiction was denied, because the creditor had a complete legal remedy against Boss, the surety, and it was no concern of his to bring the parties into equity, in order to fix the demand on the representatives of the principal. In this case, there is no remedy at law.
The other question is more difficult. The partnership was dissolved in 1812, and in May 1813, Dishman died. From that date till 1819, no proceedings were instituted against Berryman, who, in the mean time, became insolvent ; and the first suit against him is that which we are now considering, the main design of which is to subject *557 Dishman’s estate. In the interim, it would seem he had parted with valuable property, and had discharged very considerable demands, from which it may be inferred, that this debt might have been recovered of him, if it had been prosecuted immediately.
f That the liability of the estate of a deceased partner, is neither immediate nor absolute, seems to be very clear. It cannot be charged at law, but if the surviving partner is not responsible, it is liable in equity.} In this case, it is indeed agreed, that Berryman was insolvent when the bill loas filed: but the question recurs, whether it suffices to establish an insolvency, contemporary with the suit ? It is contended, that that is not enough; and that before the deceased partner’s estate can be charged, due diligence must have been used to procure payment from the surviving partner ; and it must appear, that notwithstanding the exertion of such diligence, the debt could not be recovered from him.
Now, iu considering this matter, we must bear in mind, that though the common law, deviating herein from the lex mercatoria, holds partnership contracts to produce only a joint obligation because they are joint in form, and considers them as attaching only upon the survivors ; yet the courts of equity, following what is apprehended to he the general mercantile law, considers a partnership contract several as well as joint, and binding upon the survivors. Gow’s law of partn. 436, 7. The money is advanced or the goods delivered upon the credit of all the partners. All are presumed to have derived more or less benefit from the transaction; and the question of more or less, the court will not enter into. Hence the equity to charge the estate of the decedent, though discharged at law: an equity set up beyond what the rule of law admits, which, therefore, may be rebutted, if the party is guilty of fraud or collusion, or even of laches. 2 Ves. sen. 107. What does amount to laches ? is the important question here. “ With respect to the time (says Gow, p. 443.) when the creditors should prosecute their demands against the surviving partners, in order to re *558 tain their right of resorting to the estate of a deceased partner, no rule of convenience exists, which requires them, to do it within any assigned or arbitrary limitation.” It seems to have been supposed by some, that it must be done within sonie very gl10rt period of time. But it is very doubtful (as is well observed by the master of the rolls in SleecPs case, 1 Meriv. 569.) whether the estate of a deceased partner would be benefitted by such a rule; since few houses could stand the sudden and concurrent demand, which that rule would necessarily bring upon a surviving partner. A house might be reduced to bankruptcy, which, in the ordinary course of business, might have been able to fulfil its engagements; and a demand would thus be brought on the estate of the deceased partner, from which it might otherwise have been wholly exempt. Accordingly, in that case, Miss Sleech was held not to have lost her equity by eight months delay. In Lane v. Williams, 2 Vern. 277. 292. the laches was much greater,* but did not bar the creditor. In Daniel v. Cross, 3 Ves. 277. it was nearly two years before the bankruptcy of the survivor : and in Hamersley v. Lambert, 2 Johns. Ch. Rep. 508. Hubbell, the deceased partner died in September 1803, and the surviving partner was- discharged as an insolvent in October 1807—an interval of four years. In that case, the delay was held no bar; though chahcellor Kent goes, perhaps, too far in saying, that Miss Sleech’s case established the doctrine, that “ neither delay, nor lapse of time, nor dealing with the survivor, nor calling for and receiving part of the debt from the survivor, amounts to a ivaiver or bar of the claim upon the assets of the deceased,.” “ It is,” says he, “ in equity a joint and several debt; and as lord Parker observes in one of the cases, the assets of the deceased must lie at stake, until the bond is *559 paid.” I rather think, there is no settled rule or analogy yet established upon this subject. To require the same diligence which is demanded in cases of bills of exchange, was very readily considered out of the question. To put the case upon the footing of the implied contract for due diligence between an assignor and assignee, would, it appears to me, be pregnant with the very evil so strongly stated by the master of the rolls in Sleech’s case. The case of the assignor and assignee, indeed, must always stand upon its own peculiar grounds. The principles established as to the duties of the assignee, have taken a halfway ground between the liability in cases of negotiable instruments, on the one hand, and the duties of a creditor in relation to the surety in a bond, on the other. They have been laid down for the regulation of this new kind of medium, which has been created by giving validity to the assignment of bonds, and authorizing the assignee to sue in his own name. No fair analogy can be drawn, between the case of the deceased partuer and the assignor of a bond. The assignor has parted with his interest, and stands merely as a guarantee: the deceased partner was one of two joint debtors; in his lifetime, he would have had no right to call upon the creditor, to proceed against his co-partner, or to complain that he had not done so ; and though, after his death, a court of chancery will not charge his estate with the equity, until the insolvency of the survivor is established, yet I am not aware of any express decision, which requires him to proceed within any limited time. He is still the debtor; and the assets of his estate “ must lie at stake until his debt be paid.” He was bound to see it paid in his lifetime : he was bound to follow his creditor: his creditor was neither bound to look after him, nor to pursue his partner. At his death, his obligations ought to devolve, with his estate, on his representatives : they ought to press the payment by the surviving partner, or to demand that the creditor should proceed, if danger of his insolvency be apprehended. This would be in strict analogy with the case of the surety in a *560 bond, who never can charge his creditor with laches, until ' he has prompted him in vain to pursue the principal. Considering the decedent’s estate as only bound in equity, courts of equity have indulgently said, it shall not be charged till the surviving partner is insolvent, because the debt ought in justice to be paid, if possible, by the funds of the concern. It treats the deceased partner as a surety only ; and that is going far enough. He is absolved, indeed, by collusion: he is absolved by giving time to the surviving partner, or by new arrangements with him: he may be absolved by failing to sue when required to do so ; but, if there be no such requisition, he is in no sort culpable. This: is what is meant by laches, in relation to him. In no other sense, can the cases be reconciled with this expression of lord Hardwiclce: his own decision cannot; for in the case of Bishop v. Church, 2 Ves. sen. 100. 371. it appears that Church died in 1740, and Owen, the surviving partner, became bankrupt (as I understand tbe state of the case) after the creditor Bishop’s death in 1747, and after repeated and unavailing requests by Church’s representatives, that Bishop would sue Owen, or let them sue him : yet lord Hardwiclce was of opinion, that he did not lose his recourse, because he was not bound to do so, unless they first paid him his money.
I am, therefore, inclined to the opinion, that though chancellor Kent has attributed to the master of tbe rolls in Sleech’s case, a stronger expression of opinion than that case will justify, and lays down his own, perhaps, too broadly; yet it is not going too far to say, that mere delay in instituting proceedings against the surviving partner, will not discharge the decedent’s estate, unless the creditor has been called upon to institute proceedings for the safety of that estate, and has declined or has failed to do so. Such conduct would justly be held, to rebut the equity which is raised in behalf of a creditor, against a deceased partner.
But, the court consisting, at this time, of only three members, perhaps it is better to waive the decision of the ques *561 tion now; and the rather as it does not seem essential; for I do not think the question of laches is fairly presented, Surely, if the defendants designed to rebut the plaintiff’s equity on the ground of laches, they ought to have charged it, that it might have been fairly inquired into. ' As they have not done so, the fact should not be regarded as established by the exhibits, which were irregularly filed, since they related to matters not in issue between the parties.
Decree reversed.

 So says the master of the rolls in Sleech’s case: but in the note of the editor of the late edition of Vernon, the case appears to he very incorrectly reported. He states the note to have been a year old; and he details circumstances as appearing in the case, upon which it might have been decided, without a reference to the principle under discussion. (Note by the judge.;